UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT L. GREENE,

        Plaintiff,

    v.

THOMAS GRIFFIN, and STEPHEN FABIANO,

        Defendants.

Civil Action No.: 1:13-CV-11080

### DEFENDANTS' EMERGENCY MOTION TO QUASH THE EXPERT DESIGNATION OF AND EXCLUDE THE EXPERT REPORT AND PROPOSED TRIAL TESTIMONY OF LT. COL. ROBERT T. JOHNSON[1]

Defendants Thomas Griffin and Stephen Fabiano hereby move this Honorable Court to quash the expert designation of and to exclude any and all reports, evidence, references to evidence, argument or testimony by, or relating to Lt. Col. Robert T. Johnson, the expert Plaintiff Robert Greene designated in this matter. This motion is made under Fed. R. Civ. P. 26, Federal Rules of Evidence §§ 401 to 403 and 701 to 705; under the Daubert standard; and on the argument and evidence that may be presented at the hearing on this Motion.

### MEMORANDUM OF LAW

**A.    RELEVANT FACTUAL BACKGROUND[2]**

On January 1, 2010, Officers Griffin and Fabiano arrested Mr. Greene at the corner of East Berkeley and Washington Streets in the South End; they charged Mr. Greene with two

---

[1] Defendants have presented this motion as an emergency motion due to the limited time in which they have to depose Lt. Col. Johnson should it be denied.

[2] Officers Griffin and Fabiano dispute and deny all liability in this matter and deny causing Mr. Greene any injury. The disputed facts are listed herein solely to provide the Court with relevant background information.

counts of Assault and Battery on a Police Officer, Disturbing the Peace, and Resisting Arrest.  In the course of subduing Mr. Greene, who struggled with the officers, Officer Fabiano attempted to use his department-issued radio to strike Mr. Greene's flailing hands. Officer Fabiano accidentally struck Mr. Greene on the side of his head instead.

Plaintiff Robert Greene brings this 42 U.S.C. § 1983 case against the Officers. See, Complaint, attached hereto as Exhibit A. Mr. Greene also brings a Massachusetts Civil Rights Act claim and intentional tort claims against the Officers. Id. at  ¶¶ 23-33. Mr. Greene alleges that the Officers used excessive force, falsely arrested him and injured him when they arrested him on January 1, 2010.  Id. at  ¶¶ 14-15, 22, 27, 31, 33.  Mr. Greene did not assert a Monell claim against the City of Boston.

By letter dated July 26, 2014, Mr. Greene's counsel designated Lt. Col. Robert T. Johnson as a law enforcement expert witness, specializing in Patrol, Investigations, Internal/Complaint, Drug Enforcement, Use of Force, and Prisoner Transportation and Care. See, July 26, 2014 letter from Gregory Corbin to Amy Bratskeir with attachments, including Lt. Col. Johnson's proposed expert report, attached hereto as Exhibit B.

Lt. Col. Johnson based his opinion solely on the following: Mr. Greene's Complaint, the Officers' Initial Disclosures (containing the Incident Report, Booking Form, Visible Injury Report, CAD Sheet and Booking Photos), the Officers' Answers to Mr. Greene's Complaint, and the Incident Report relating to Mr. Greene's arrest which is authored by Officer Griffin.  Lt. Col. Johnson has not reviewed either Mr. Greene's deposition testimony or his medical records in which he describes his arrest. Nor has he reviewed the deposition testimony of the defendant officers or two additional non-party officers who took part in Mr. Greeen's arrest. Based on his review of limited documents and testimony relevant to this case, Lt. Col. Johnson concludes that

the Incident Report is deficient in several respects, given what officers are trained to write in police reports. See, Ex. B at page 4. In addition, Lt. Col. Johnson assumes as true the vehemently disputed fact that Officer Fabiano intentionally hit Mr. Greene in the head with a radio to subdue him. See, Ex. B, at pages 4-5. Lastly, Lt. Col. Johnson assumes that the Officers did not complete and/or file use of force reports related to Mr. Greene's arrest. Based on this assumption, Lt. Col. Johnson opines that "Boston Police Department supervisors failed to adhere to accepted practices and standards within the law enforcement field." See, Ex. B, at page 5.

**B.     LEGAL STANDARD**

Expert testimony is admissible to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see also U.S. v. Corey, 207 F.3d 84, 89 n.5 (1st Cir. 2000). Federal Rule of Evidence 702 allows a party to offer expert knowledge provided "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; See generally Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)(applying Daubert standard to expert testimony of non-scientists). "Although the approach is flexible by its nature (after all, expert testimony and the peculiar facts of each case so demand), the overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony." Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co., 295 F.3d 68, 81 (1st Cir. 2002). In exercising its "gatekeeper" role, "a court first must determine whether the expert possesses some specialized knowledge such that his or her testimony will be helpful to the trier of fact and, if so, whether that knowledge arises from reliable principles and methods applied in a reliable manner." McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 423 (D. Mass. 2008).

The experts conclusions cannot be based "mere subjective belief or unsupported speculation." See Fed. R. Evid. 702; Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 590-93(1993).  In assessing admissibility, "the court's analysis focuses on the expert's methods and reasoning, and not on the expert's conclusions."  Claar v. Burlington Northern R. Co., 29 F.3d 499, 501 (9th Cir. 1994).  Fed. R. Evid. 702 "makes clear that reliable application of a method is every bit as important as whether the method is itself reliable."  Stephen A. Saltzburg et al., 3 Federal Rules of Evidence Manual § 702.02[10] (8th Ed. 2002).  Expert opinions can be excluded where they constitute "common sense observations" and not "specialized knowledge needed to assist the jury to determine a fact at issue."  United States v. Raymond, 700 F. Supp. 2d 142, 150-51 (D. Me. 2010) (excluding expert testimony as to techniques/characteristics of child molesters).  A court has "substantial discretion" to admit or exclude relevant expert testimony.  Mitchell v. United States, 141 F.3d 8, 15 (1st Cir.1998).  Pursuant to Fed. R. Evid. 104(a), the proponent must establish the evidence's admissibility by a preponderance of the evidence.  Fed. R. Evid. 104(a); see, e.g. Bourjaily v. United States, 483 U.S. 171, 175 (1987).

**C.    ARGUMENT**

    **1.    Lt. Col. Johnson's Report States Opinions Which Usurp the Fact-Finding Role of the Jury.**

Lt. Col. Johnson's expert testimony is insufficient under Daubert-Lanigan because it does not assist the trier of fact. Rather it is conclusory, speculative, and not based on objective criteria. "The ultimate purpose of the Daubert inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." Cipollone v. Yale Indus. Products, Inc., 202 F.3d 376, 380 (1st Cir. 2000). Here's the ultimate issue to be decided by the jury is whether the force used by Officers Griffin and/or Fabiano during Mr. Greene's arrest was reasonable

4

under the totality of the circumstances. Graham v. Connor, 490 U.S. 386 (1989). As discovery has shown, the only witnesses to Mr. Greene's arrest are Mr. Greene, the two defendant-Officers and two non-party-officers who were present. The jury's role, therefore, will be to determine which version of facts is more likely than not to be the case – the version told by Mr. Greene or the version told by the Officers.

Lt. Col. Johnson's opinions concerning the reasonableness of the degree of force used is unnecessary and unhelpful and has no place in this case. See, Jennings v. Jones, 499 F.3d 2, 14 (1st Cir. 2007) (stating that the jury must be allowed to make a common sense judgment as to whether officer used excessive force, especially when force used by defendant is primitive, i.e. use of fists). See also, Hutchison v. Cutliffe, 2004 WL 5524566 (D. Me. 2004) (excluding part of expert's proposed testimony in civil rights action where expert opined that taking plaintiff's version events as true, the degree of force used by police officer-defendant in the course of plaintiff's arrest was excessive). In Hutchison, the Court stated, "once a jury decides which set of facts it believes, it will be within their ability as lay persons to decide whether the use of force was reasonable or not." Id. The proper role of an expert in a case where excessive force is alleged, is to provide testimony which may assist the jury in determining the underlying facts. Id. Expert testimony about the "reasonableness" of a police officer's actions "should be excluded because [the expert's] opinion on that score depends upon nothing more than a regurgitation of [the plaintiff's] version of events and his personal conclusion about the reasonableness of [the defendant-officer's] responses." Id. The jury's analysis should not be tainted with Lt. Col. Johnson's inappropriate and unhelpful determination of whether the Officers' conduct was reasonable. Even if the jury should determine that the Officers acted unreasonably and return a

verdict for Mr. Greene, post-trial motions concerning the Officers' qualified immunity would still not take expert testimony regarding their actions into account.

Lt. Col. Johnson predicates his opinion on the reasonableness of the force used against Mr. Greene on a) Mr. Greene's allegation that the officers struck him with their fists and b) Officer Fabiano's use of a department-issued radio to strike Mr. Greene. Both types of force are primitive in nature, and do not require explanations from an expert on police techniques that may be unfamiliar to jurors. Therefore, opinions on the type of force used against Mr. Greene and the reasonableness of such force is wholly inappropriate. See, Jennings 499 F.3d at 15 (stating that "where force is reduced to its most primitive form—the bare hands—expert testimony might not be helpful" and is not required to determine whether force used was reasonable). Because Lt. Col. Johnson's opinions would be manifestly unhelpful to the jury in this matter, his designation as a testifying expert in this matter must be quashed.

### 2. Lt. Col. Johnson Failed to Rely on Several Key Documents in Arriving at His Opinions.

Lt. Col. Johnson's opinions are unreliable because they are based on only a few, limited documents in this case: the Complaint, the defendants' Initial Disclosures, the Incident Report generated by Officer Griffin, and the defendant's Answers to the Complaint. He did not review Mr. Greene's deposition testimony, nor did he review the deposition testimony given by the defendant-Officers or the two non-party Officers who also participated in the stop and arrest of Mr. Greene. All deponents, including Mr. Greene, gave testimony which contradicts many of the key allegations made by Mr. Greene in his Complaint. In addition, Lt. Col. Johnson failed to review any statements given by Mr. Greene about the circumstances of his injuries, which are contained in numerous medical records produced during fact discovery. In several instances, Mr.

Greene made statements which contradict the allegations made in the Complaint, specifically about how his arrest occurred. Without having reviewed these key documents, which were available but not provided to him, Lt. Col. Johnson's opinions concerning the arrest and conduct of the Officers is unreliable.

### 3. Lt. Col. Johnson's Report Is Riddled With Impermissible Speculation.

Lt. Col. Johnson's opinions are explicitly and solely predicated on a baseless assumption that the allegations made by Mr. Greene in his Complaint are true. The Complaint is an unverified document which has been contradicted and undermined by many documents produced in discovery, as well as deposition testimony. By making the Complaint the bedrock of his opinions as to the conduct of the defendants, Lt. Col. Johnson's opinions are inherently unreliable.

For example, Lt. Col. Johnson opines that "assuming the allegations in paragraphs 13 and 14 [of the Complaint] are accurate … then the force used as alleged by the Plaintiff was unreasonable and excessive." See, Ex. B, at Opinion #13. Paragraphs 13 and 14 of the Complaint state:

> After one of the Defendants shouted 'Hold it or I'll shoot,' Greene stopped running, and all four Defendants descended on him. The Defendants struck Greene repeatedly on both sides of the head, causing him to fall face down onto the sidewalk. Greene was handcuffed and his legs were tied together with plastic restraints while one of the Defendants was sitting on him. That Defendant forcefully pushed Greene's head into the sidewalk at least three times, causing him to suffer a serious head injury.

He also opines, "assuming the allegations listed in paragraphs 9, 11 and 12 are accurate there was not probable cause to arrest Greene" See, Ex. B, at Opinion #14. Paragraphs 9, 11 and 12 allege:

On January 1, 2010, at approximately 6:45 p.m., the plaintiff was walking westbound on East Berkley Street. His destination was Copley Square. The defendants approached Greene in an unmarked police cruiser as he was walking down East Berkley Street. The driver of the unmarked cruiser identified himself as a police officer and asked Greene where he was going. Greene responded, and this elicited an offensive remark directed at Greene from one of the Defendants. Greene, who at this point was not under arrest, verbally responded to the offensive remark. This remark caused the Defendants to become visibly enraged. Fearing for his safety, Greene began running down East Berkley Street towards Washington Street. Defendants exited the police cruiser and ran after him.

The depositions of the defendant-officers, as well as witness-officers, elicited testimony which contradicts and undermines Mr. Greene's allegations. Plaintiff should not be allowed to short-circuit his burden of proving that these allegations are more likely than not to be true by offering expert testimony that stamps them with a seal of approval and truth. Such testimony will only serve to mislead the jury. Therefore, Mr. Greene's designation of Lt. Col. Johnson should be quashed.

### 4. Lt. Col. Johnson's Report Includes Opinions that Are Immaterial to Any Claim Made by Mr. Greene Against the Defendants.

Next, though Mr. Greene has not made any claim against the City of Boston due to any of its policies and/or practices (a Monell claim), Lt. Col. Johnson opines about (1) the manner in which the Boston Police Department adhered to practices and standards concerning the filing of a Use of Force Report related to Mr. Greene's arrest and (2) the Police Department's failure to properly investigate Mr. Greene's arrest. See, Ex. B, at Opinions #12 and #15. These opinions are irrelevant because they will not assist the jury with understanding any claim made my Mr. Greene in his Complaint. His opinions on matters pertaining to the Boston Police Department, a non-party, will only serve to confuse and mislead the jury.

Lt. Col. Johnson's report also includes opinions as to the Officers' lack of reasonable suspicion for conducting a Terry stop of Mr. Greene. See, Ex. B, at Opinions #1-#5. Whether the

Officers had reasonable suspicion to stop Mr. Greene is irrelevant a) because Mr. Greene has not made this claim as part of his Complaint and 2) Mr. Greene suffered no damages flowing from his stop and no such damages will be considered by the jury. Allowing expert testimony on this irrelevant matter will only serve to mislead and confuse the jury.

Lastly, Lt. Col. Johnson's report contains opinions as to the contents of the Incident Report drafted by Officer Griffin. See, Ex. B at Opinions #5-#7. Whether Officer Griffin properly completed the Incident Report is irrelevant and has no bearing on what the Officers did leading up to and during Mr. Greene's arrest. Again, expert testimony on an administrative matter outside the claims made by Mr. Greene will only mislead and confuse the jury. Therefore, the Plaintiff's designation of Lt. Col. Johnson should be quashed.

**D.**     **CONCLUSION**

For the foregoing reasons, and for others stated orally in Court, Defendants Thomas Griffin and Stephen Fabiano respectfully request that this Honorable Court quash the Plaintiff's designation of Lt. Col. Robert T. Johnson as a testifying expert in this matter.

Respectfully submitted,

DEFENDANTS THOMAS GRIFFIN and STEPHEN FABIANO,

Eugene L. O'Flaherty
Corporation Counsel

By their attorneys:

/s/Julie A. Ciollo
Amy Bratskeir, BBO # 662034
Julie A. Ciollo, BBO# 666080
Assistants Corporation Counsel
City of Boston – Law Department
Room 615
Boston, MA 02201
(617) 635-4034
Amy.Bratskeir@boston.gov
Julie.Ciollo@boston.gov

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and my first class mail to non-registered participants.

/s/Julie A. Ciollo

DATE: August 8, 2014

**LOCAL RULE 7.1 CERTIFICATION OF COUNSEL**

Defendants Thomas Griffin and Stephen Fabiano, through counsel, certify that they conferred with counsel for Plaintiff on this motion on August 6, 2014 but they were unable to narrow the issues raised herein.

Date: August 8, 2014                    /s/Julie A. Ciollo

Julie A. Ciollo